```
UNITED STATES DISTRICT COURT
   DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| CAROL MONTAGANO,  :<br>as legal guardian and on behalf of  :<br>WENDY GIANO,  :<br>   :<br>   Plaintiff,  :<br>   :<br>v.  :<br>   :<br>SAFECO INSURANCE COMPANY  :<br>OF AMERICA,  :<br>   :<br>   Defendant.  :<br>_____ : | CIVIL ACTION NO. 16-9375 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

Wendy Giano is an incapacitated adult, who is forty-one years old. (Dkt. 5 at 1.)[1] Plaintiff Carol Montagano is Giano's mother and was appointed legal guardian of Giano in April of 2000. (Id.) Montagano, who is seventy-three years old, has been Giano's primary care giver since her daughter was injured in a 1975 motor vehicle accident. (Id. at 3, 8.)

Montagano brings this suit, in her capacity as legal guardian for Giano, against Defendant Safeco Insurance Company of America ("Safeco"). She argues that Safeco breached their insurance policy contract because it has failed to provide the agreed upon coverage for Giano's injuries sustained in the 1975 accident (Count One). (Id. at 18–19.) Montagano also seeks a declaratory judgment setting forth Safeco's obligations under the

---

[1] We will cite to the documents filed on the Electronic Case Filing System ("ECF") by the designation of "dkt." Pincites reference ECF pagination.

insurance policy (Count Two). (Id. at 19–21.) Under both counts, Montagano contends that Safeco has a duty to fund and implement a Life Care Plan for Giano—which it has failed to do. (Id. at 18–22.)

Safeco has filed a motion to partially dismiss Montagano's claims. (Dkt. 7.) Safeco has moved to dismiss the breach of contract claim to the extent that it focuses on the Life Care Plan, which, according to Safeco, it does not have to fund as a matter of law because the plan is not a qualifying "reasonable medical expense" and the care described within is speculative and has not been "incurred" within the meaning of N.J.S.A. 39:6A-4. (Id. at 8–11.) Safeco also contends that the declaratory judgment claim must be dismissed with respect to the Life Care Plan because declaratory relief would be premature and would not finalize any controversy between the parties. (Id. at 11–12.)

We have considered the filings and will resolve the matter without oral argument. See L.Civ.R. 78.1(b). For the following reasons, we will deny the motion to partially dismiss the Amended Complaint.

## I. Background

We glean the following background from the allegations in the Amended Complaint, which we accept as true at this stage in the pleadings. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). We limit our discussion of the facts to those relevant to the motion to dismiss.

### A. Giano's Accident and Care

On June 7, 1975, when she was three and one-half months old, Giano was involved in a motor vehicle accident. (Dkt. 5 at 3.) Giano's father, Louis Giano, was driving the motor vehicle when he was struck head-on by another driver. (Id.) Mr. Giano was killed in the

2

accident. (Id.) Montagano, Giano, and three of Giano's siblings were severely injured. (Id.) Despite her injuries, Montagano began caring for her four children after the accident. (Id. at 3, 5–8.)

Giano suffered a massive traumatic brain injury because the crank handle on the vehicle window penetrated her skull. (Id. at 3.) Initially, Giano began having "strange jerking and twitching motions," which were diagnosed as seizures caused by the accident. (Id. at 3–4.) She was prescribed medications to control the seizures but the medications were not successful. (Id. at 4.) Over time, her condition deteriorated, and Giano was "no longer achieving developmental milestones." (Id. at 3.) Her vision became "extremely limited" within months after the accident. (Id.)

Today, Giano has the cognitive function and abilities of a three-year old. (Id. at 3.) She can only verbalize simple requests for items that she needs or wants. (Id. at 9.) She remains "visually impaired, has right hemiparesis and weakness in all extremities, is subject to behavioral problems and phobias, and is intermittently incontinent." (Id. at 3.) Her phobias include open spaces, water, and doctors' and dentists' offices. (Id. at 9.) Giano has difficulty eating due to decay in her teeth caused by taking anti-seizure medication for nearly forty years; she has had multiple teeth extracted as a result. (Id. at 10.) Any type of dental appointment or blood test requires hospitalization and sedation. (Id.)

Giano also has difficulty moving around. (Id. at 9.) She requires assistance using the bathroom. (Id. at 11.) Because of weakness on her right side, Giano's gait has become uneven recently. (Id. at 10.) She has difficulty walking up and down steps. (Id.) She also requires a step stool to enter the family van. (Id.) Recently, her right arm has become

3

"frozen" due to lack of use. (Id.) Giano's neurologist has reported that the brain injury will not improve, and the condition of her right side will continue to worsen over time. (Id.)

Giano's skin must be "kept warm and moist at all times," because she has an extreme sensitivity to cold and cannot maintain her body temperature. (Id. at 9, 11.) As a result, an indoor pool and room were deemed medically necessary for Giano's care and she swims almost every day (with the use of a life jacket and under supervision from her mother) because the water's moist heat helps keep her skin pliable, allowing Giano to exercise without exerting too much stress on her legs. (Id. at 10.)

Montagano has been the primary caregiver for her daughter and spends the majority of her day dedicated to Giano's care from approximately 5 a.m., when Giano wakes, until 8:30 p.m., when Giano goes to sleep. (Id. at 8, 11.) Montagano's daily activities include "assisting Giano with dressing, bathing, toileting, and all other activities of daily living." (Id. at 8.) Every morning, Montagano cleans and dresses Giano, prepares her breakfast, and administers her medication to her. (Id. at 11.) When Giano uses the pool, Montagano must be present to supervise. (Id. at 10.)

Giano is not eligible for state-sponsored housing because she does not qualify under the financial needs test, and she is not eligible for state-sponsored medical services because she does not qualify under Medicaid. (Id. at 9.) Because there are no facilities appropriate for Giano and her care in the New Jersey area, Montagano's home has become Giano's facility. (Id.) Since 2008, Giano has attended an adult day care program a few days each week at Seacrest Village. (Id. at 8.) Safeco approved a registered nurse to provide part-time assistance for Giano's care. (Id. at 11.) Additionally, beginning in 2014, Giano's sister began

4

to care for Giano and to allow Giano to stay overnight at her home once or twice per week to provide a break for Montagano. (Id. at 12.)

B. **Insurance Policy and Life Care Plan**

At the time of the 1975 accident, Giano's parents had an insurance policy ("the Policy") for motor vehicle coverage with Ohio Casualty Group. (Id. at 4.) Giano was an insured under the Policy. (Id.) Ohio Casualty Group, pursuant to the Policy, would provide first party insurance coverage to Giano and her family. (Id.)

Beginning in 2008, Safeco assumed all obligation and responsibilities under the Policy for handing Giano's insurance claims. (Id. at 2, 5.) According to the Policy and New Jersey Law[2], Ohio Casualty Group, and now Safeco, were "required to pay for all reasonable and necessary medical expenses resulting from the personal injuries that Giano sustained in the motor vehicle accident during her lifetime." (Id. at 5.)

Since the motor vehicle accident, Ohio Casualty Group, and later Safeco, have provided financial assistance for some claims but have not provided financial assistance for other claims. (See generally id. at 5–8 (discussing reimbursement by Ohio Casualty Group); id. at 12–16 (discussing reimbursement by Safeco).)[3] Montagano has "faced numerous challenges in dealing with Safeco," specifically that Safeco has failed to timely respond to and authorize claims submitted. (Id. at 12–17.)

---

[2] The Policy is governed by the New Jersey's Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 et seq., (New Jersey No Fault Law), as it was in effect at the time of the accident. (Dkt. 5 at 4.) Safeco agrees that the Policy is covered by the law as it existed in New Jersey at the time of the accident. (Dkt. 7 at 6, 8.)

[3] As Safeco's motion to partially dismiss is limited solely to the proposed Life Care Plan, we limit our discussion to that and do not go into detail regarding the other services provided to, and sought for, Giano.

In 2008, the Montaganos retained Robert Voogt, Ph.D., C.R.C., to prepare the Life Care Plan for Giano. (Id. at 16; id. at 23–37.) The Montaganos sought to implement a Life Care Plan to coordinate with Safeco to provide for Giano's care when they were no longer available to care for Giano themselves. (Id. at 16.) The Life Care Plan "sets forth [Giano]'s medically required needs for medical evaluation and treatment, therapeutic evaluation treatment programs, maintenance, equipment for activities of daily living, medication, and other expenses for the rest of [Giano]'s expected life." (Id.) Giano's life expectancy "is still into her eighties" and it is anticipated that she will live for another forty years and require continual care and assistance. (Id. at 17.)

To fund the Life Care Plan, the Montaganos must purchase an annuity or related financial product to pay the expenses within the Life Care Plan for the remainder of Giano's life. (Id. at 17.) Safeco has declined to engage with the Montaganos in any discussion to implement the Life Care Plan, to purchase an annuity, or to plan with the Montaganos the future of Giano's care. (Id.)

Montagano alleges that it is in Giano's best interests and medically necessary to remain living in her current home after her mother and step-father are no longer able to care for her. (Id.) Montagano alleges that it is in Giano's best interest and medically necessary that Safeco fully funds the Life Care Plan now, "to assure Montagano and her step-father that Giano's care will be provided and paid for after they are gone." (Id.) Without her "constant prodding of Safeco and hiring an attorney to represent her," Montagano believes that Safeco would "continue to delay and not provide the reasonable and necessary medical care for [Giao] as provided for in the Life Care Plan." (Id.) Montagano alleges that it is in Giano's

6

best interest that either she or Giano's future guardian "be able to provide for and pay directly for her medical needs in the future from the Life Care Plan rather than deal with the outrageous conduct of Safeco and its failure to timely respond to the legitimate, reasonable and necessary medical requirements of [Giano]." (Id.) Montagano believes that Giano has been left vulnerable to potential physical injuries in the future because of Safeco's failure to fund the Life Care Plan and pay for Giano's reasonable and necessary medical care. (Id. at 18.)

## II. Legal Standard

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, a court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In evaluating the sufficiency of a plaintiff's factual pleadings, a court must take three steps:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their

7

> veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citations and quotation marks omitted). However, "a court need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (quotation omitted).

### B. New Jersey No Fault Law

This matter is governed by the New Jersey's Automobile Reparation Reform Act, N.J.S.A. 39:6A-1, et seq., (New Jersey No Fault Law), as it was in effect at the time of the accident in 1975. At that time, the statute required that "[e]very automobile liability insurance policy insuring an automobile as defined in this act against loss resulting from liability imposed by law for bodily injury, death and property damage sustained by any person arising out of ownership, operation, maintenance or use of an automobile shall provide additional coverage." L. 1972, c. 203, § 3, at p. 782, codified at N.J.S.A. 39:6A-4. The statute defined "additional coverage" to include "medical expense benefits," which required "[p]ayment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident." L. 1972, c. 203, § 3, at p. 782, codified at N.J.S.A. 39:6A-4(a).[4]

The New Jersey Legislature has directed that the "act shall be liberally construed so as to effect the purpose thereof." N.J.S.A. 39:6A-16. The New Jersey courts have likewise applied the statute broadly. "The No Fault Act is social legislation intended to provide

---

[4] The New Jersey Legislature amended N.J.S.A. 39:6A-4(a) in 1990 as part of a general reform of the No Fault Law, and removed the word "incurred" from the statute. L. 1990, c. 8, § 4, at p. 27–28; Curts v. A. Mut. Ins. Co., 587 A.2d 1283, 1286 (N.J. Super. App. Div. 1991). The Legislature did not provide an explanation for this specific change.

8

insureds with the prompt payment of medical bills, lost wages and other such expenses without making them await the outcome of protracted litigation. Mandated as a social necessity, PIP coverage should be given the broadest application consistent with the statutory language." Amiano v. Ohio Casualty Ins. Co., 424 A.2d 1179, 1181 (1981). The statute must thus be construed liberally, and "the statutory language must be read, whenever possible, to promote prompt payment to all injured persons for all of their losses." Gambino v. Royal Globe Ins. Cos., 429 A.2d 1039, 1043 (1981).

## III. Analysis

### A. Breach of Contract (Count One)

Safeco has moved to partially dismiss Montagano's breach of contract claim, arguing that it is not required to cover the proposed Life Care Plan under New Jersey law. (Dkt. 7 at 8–11.) Specifically, Safeco argues that because Montagano seeks "unknown but anticipated future treatment" for Giano, the care does not qualify as a "reasonable medical expense incurred." (Id. at 8; dkt. 11 at 2.)

Montagano responds that we must construe the statute broadly and in favor of the insured. (Dkt. 10-2 at 10.) She contends that she has sufficiently alleged at this stage that Dr. Voogt's Life Care Plan is a "reasonable medical expense," and that the ultimate determination of reasonableness is for the fact finder. (Id. at 12–13.) She further argues that she has incurred the cost of Giano's Life Care Plan, and that the statute does not require medical treatment to first be received before the insurer becomes liable for coverage. (Id. at 16–17.)

Safeco has moved to partially dismiss the breach of contract claim solely on the grounds that it is not required to provide coverage for the Life Care Plan as a matter of New

9

Jersey law. But we read Count One of the Amended Complaint to be more than a mere allegation of denial of insurance coverage. We are thus hesitant to parse the breach of contract claim as Safeco requests. Montagano has alleged that Safeco has failed to discuss the funding of annuity or Giano's future care plans. These claims are tied into the overall breach of contract claim as part of the larger alleged pattern of conduct.

Count One of the Amended Complaint alleges that Safeco breached the contract in part by engaging in a pattern of conduct for years of wrongful delays and denials of coverage. Mrs. Montagano alleged that "Safeco has repeatedly breached the Policy by failing to timely respond to and fulfill claims submitted by Mrs. Montagano on behalf of [Giano] for [Giano]'s reasonable and necessary medical expenses." (Dkt. 5 at 18.) The Amended Complaint contains multiple specific allegations of delays and denials by Safeco of requested services and treatments. (Id. at 12–16.) This includes Safeco's failure to "engage in meaningful discussions with the Montaganos about [Giano]'s care into the future." (Id. at 18.)

The potential relief available for an alleged breach of contract is varied, including damages in the form of an annuity.[5] Montagano has sufficiently claimed that funding an annuity is plausible relief as damages for the alleged repeated acts of Safeco failing to provide required services and treatments. We do not decide whether coverage of the proposed Life Care Plan for forty years is required under the Policy or New Jersey law. Rather, we find that seeking damages in the form of an annuity is appropriate relief for a breach of contract, and at this early juncture of the litigation, we will not limit the available remedies for the alleged

---

[5] Although annuities are frequently used as part of structured settlements, they are also an available remedy as part of a judgment.

10

breach. See, e.g., Hatteras Press, Inc. v. Avanti Computer Sys. Ltd., No. 16-cv-5420, 2017 WL 2838349, at *6 (D.N.J. June 30, 2017); Gold Cross Safety Corp., Inc. v. PHH Veh. Mgt., No. 07-cv-2401, 2008 WL 2625357, at *7 (D.N.J. June 27, 2008).[6]

Therefore, we will deny Safeco's motion to partially dismiss Count One.

### B.     Declaratory Judgment (Count Two)

In Count Two of the Amended Complaint, Montagano seeks a declaratory judgment, under 28 U.S.C. §§ 2201–2202, that "Safeco must provide [Giano] with all of the products, services, and accommodations set forth in the Life Care Plan." (Dkt. 5 at 20.)

Safeco has moved to dismiss this claim for declaratory relief. Safeco argues that New Jersey law does not require it to fund and pay for the Life Care Plan because none of the treatments or services have occurred. (Dkt. 7 at 11–12.) Safeco also argues that the Life Care Plan is "a future and a speculative right" and we cannot grant declaratory relief because "[a]ny judgment would not finalize the controversy between the parties or offer relief from uncertainty." (Id. at 12.) Montagano responds that the declaratory relief she seeks—to declare that Safeco must provide Giano with the services set forth in the Life Care Plan—is ripe for determination. (Dkt. 10-2 at 17–23.)

The New Jersey No Fault Law does not foreclose liability because the medical benefits have not yet been provided. New Jersey courts have acknowledged that the statute permits an

---

[6] While Safeco also asks us to strike the parts of the Amended Complaint related to the Life Care Plan, it has not filed a formal motion to strike pursuant to Rule 12(f). Striking part of a complaint is a "drastic remedy" and motions to strike are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." Tonka Corp. v. Rose Art Indus., 836 F. Supp. 200, 217 (D.N.J. 1993) (quotations omitted). Because Safeco has not formally moved to strike, nor otherwise satisfied the requirements of such a motion, we will not strike any part of Count One of the Amended Complaint.

indefiniteness in future benefits that an injured person may receive. See, e.g., Zupo, 474 A.2d at 264 (referring to the "indefinite period of time" and "indefinite future" when insurer would still be held liable for the medical expenses of the injured person). "[O]nce payment is determined to be due, the statute does not place any time limitations on the payment of future benefits." Ochs v. Federal Ins. Co., 447 A.2d 163, 166 (1982) (emphasis added). "Consequently, when a carrier acknowledges its responsibility for medical expenses by the unambiguous act of making payment, it is also necessarily assuming the responsibility to continue to make future payments for an indefinite period of time provided only that the claimed medical expenses are related to and are necessitated by the original occurrence." Zupo, 474 A.2d at 263. As such, we reject Safeco's argument that funding for unreceived services and treatments listed cannot be the subject of declaratory relief under New Jersey law.

We turn next to whether there is an actual controversy presented that would warrant declaratory relief. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

The Supreme Court has explained that "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for

12

determining in every case whether there is such a controversy." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). In analyzing whether a controversy exists within the meaning of the statute, a court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. If the facts alleged do not create a case or controversy, they are not ripe for consideration by a federal court. Fed. Kemper Ins. Co v. Rauscher, 807 F.2d 345, 350 (3d Cir. 1986).

Declaratory judgment actions must be "ripe" for resolution, meaning that the party bringing the action has done so at the right time. Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154 (3d Cir. 1995). Although the parameters of ripeness are difficult to define in a declaratory judgment action because "declaratory judgments are, of necessity, rendered before an 'accomplished' injury has been suffered," the Third Circuit has specified three factors to assist courts in determining whether a declaratory judgment is ripe for resolution. Id. For a matter to be ripe, "(1) the parties must have adverse legal interests; (2) the facts must be sufficiently concrete to allow for a conclusive legal judgment, and (3) the judgment must be useful to the parties." Surrick v. Killion, 449 F.3d 520, 527 (3d Cir. 2006).

The first factor, adversity of the interest, requires the court to find "a substantial threat of real harm and that the threat must remain real and immediate throughout the course of the litigation." Presbytery of N.J. of Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1463 (3d Cir. 1994). To satisfy this factor, the party seeking the declaratory judgment need not have "suffered a completed harm." Surrick, 449 F.3d at 527 (emphasis added).

13

The second factor, conclusiveness, addresses "whether the parties' rights will be definitively decided by a declaratory judgment." Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 649 n.9 (3d Cir. 1990). The test for conclusiveness requires the court to determine whether "judicial action at the present time would amount to more than an advisory opinion based on a hypothetical set of facts." Presbytery, 40 F.3d at 1468. The "conflict between the parties . . . cannot be 'nebulous or contingent,'" but rather, it "'must have taken on fixed and final shape so that a court can see what legal issues it is deciding.'" Wyatt, Virgin Islands, Inc. v. Gov't of the Virgin Islands, 385 F.3d 801, 806 (3d Cir. 2004) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 244 (1952)).

The third factor, usefulness, requires the court to consider "whether the parties' plans of actions are likely to be affected by a declaratory judgment." Presbytery, 40 F.3d at 1469 (citing Step-Saver Data Sys., 912 F.2d at 649 n.9). The judgment must provide "practical help" or "utility." Step-Saver Data Sys., 912 F.2d at 647. The purpose of the Declaratory Judgment Act was to "clarify legal relationships so that [parties] could make responsible decisions about the future." Travelers Ins. Co., 72 F.3d at 1155. Thus, we must assess "whether a declaratory judgment will affect the parties' plans of actions by alleviating legal uncertainty." Surrick, 449 F.3d at 529.[7]

Having considered these three factors, we find that Montagano has sufficiently alleged that there is an actual controversy presented that could warrant declaratory relief.

---

[7] In an insurance coverage dispute, the second and third prongs of the ripeness test are closely related. Travelers Ins. Co., 72 F.3d at 1155.

14

First, the parties' interests are adverse. Montagano claims that she is entitled to coverage for the Life Care Plan, and Safeco disagrees that it is required to fund the Life Care Plan. The Third Circuit has previously held that a dispute between an insured and insurer regarding the insurer's obligation to provide coverage is "a very real and immediate adversity of interests." Travelers Ins. Co., 72 F.3d at 1155. The coverage dispute between Montagano and Safeco, likewise, presents an immediate adversity of interests. Montagano does not need to have already paid for Giano's Life Care Plan to establish this factor, nor does Giano need to have begun receiving the care. See Surrick, 449 F.3d at 527. It is sufficient to allege that Giano immediately needs the Life Care Plan to fund the services outlined by Dr. Voogt, and for Safeco to contest that.

Second, a declaratory judgment would resolve the rights of the parties. Montagano has not alleged hypothetical facts; rather, she has provided an evaluation from Dr. Voogt detailing the services that Giano needs and providing a cost for those services. (Dkt. 5 at 23–37.) Montagano has claimed that "[a] declaration will conclusively establish [her] right to receive payment for [Giano's] care." See Travelers Ins. Co., 72 F.3d at 1155. In a similar case regarding insurance coverage, the Third Circuit has explained that a declaratory judgment action would resolve the rights of the parties because an insured "ought not to have to risk incurring the financial obligation of such care before knowing if [the insurer] is obligated to pay for it." See id. We apply that rationale here.

Third, a declaratory judgment would be useful to the parties. A declaratory judgment would establish whether Safeco must provide coverage and fund the Life Care Plan. Montagano has alleged that if Safeco will cover the Life Care Plan, she will proceed with it.

15

Removing the uncertainty would allow Montagano to "make responsible decisions about the future" and either proceed or not proceed with the Life Care Plan. See id. at 1155–56 ("[The insured] should not have to blindly take the step of incurring an expense that [the insurer] may be legally obligated to assume before being told if she has stepped in a hole.").

We find that Montagano has sufficiently alleged facts indicating the ripeness of the declaratory judgment action. We will therefore deny Safeco's motion to partially dismiss Montagano's declaratory judgment claim, Count Two.

## CONCLUSION

For the reasons stated, we deny Safeco's motion to partially dismiss the Amended Complaint.

We will enter an appropriate order.

   s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** July 7, 2017